17-0162 Thomas Cunningham and Avenue by Justin Penn v. County of Peoria, Lori Curtis, et al. Founds by Thomas Woodrow. Please proceed. Good morning, and may it please the Court. My name is Thomas Woodrow, and along with Mr. Unrath, I represent the County of Peoria in the cases that we have brought to you. And we bring these cases to you asking the Court to review and uphold an administrative decision, a personnel decision, that was made at the local level by a committee of the Board of Peoria County. We're here because the Circuit Court reversed that administrative decision, and as part of its decision, ordered the County to certify and submit pension-related forms that violate IMRF and Peoria County guidelines, and in the view of the County, contain inaccurate and false information. Who did the Circuit Court order to complete those forms? It ordered the County. The person? There is an IMRF-authorized agent, Your Honor. Who is that? Her name is Shawna Musselman, and the materials that are in the case at the time this was filed, that person was Ms. Kate Van Beek. And so that would normally be the person. Was she the second-in-command of the County? I think she had to be under the IMRF statute. She has to be like the Assistant County Administrator? That's right. I think they refer to it as the authorized IMRF agent, and the County is responsible to appoint someone in that position. So Ms. Musselman, she is now the Assistant County Administrator? Yes, and the authorized IMRF agent, she wears some other hats in terms of human resources as well. So it does fall on her if this goes forward. The genesis of this dispute, at least in terms of recent times, started with an overnight letter dated April 24, 2014, written by Mr. Penn's counsel to Ms. Van Beek, enclosing 13 pages of IMRF forms, and asking Ms. Van Beek to enroll Mr. Penn, who was the public defender at the time, in IMRF, and to certify retroactive and omitted service credit going back 29 1⁄2 years. That's why there were 13 pages of forms, because there's about 12 months on each form. And in those forms, someone filled out an estimate, and it was admitted in the letter that these were estimates of hours worked by Mr. Penn over the years. This request came 29 1⁄2 years, give or take, since the beginning of the first of several multi-year contracts with Peoria and the Tenth Circuit, under which Mr. Penn acted as an independent contractor public defender. The letter demanded that the enrollment and the certification all take place by the following Tuesday, which happened to be one day before the end of Mr. Penn's last contract. I'm having some trouble with that door. I know it does it on its own. And with all due respect to the County of Peoria, my client, it is not a rapid expeditionary force. It requires some thought. It requires process. There are rules and regulations and guidelines that apply to these sort of requests. There was some back-and-forth requesting information. Some was provided, some wasn't, relating to this request. And at the end, after a couple of months, Ms. VanViek, in coordination with the state's attorney and the county administrator, which was part of the procedure to review these sorts of requests, denied the request. In what form? In a letter. There was a correspondence, and it was June 16, 2014, a letter from Mr. Atkins, who was in the state's attorney's office, to Mr. Smith. And the last sentence of that letter is, Ms. VanViek offers to continue to discuss the matter. Yes, Your Honor. And there was no further discussion. But the decision had been made. And within a couple of months. Do you consider that a final decision? At the staff level, yes. But there is a procedure process, a process for an appeal, to the committee that made the administrative decision in this case. When Ms. VanViek communicated through that letter, drafted by the assistant state's attorney, what was the process to appeal? The process to appeal was to bring an appeal to the county operations committee. That county operations committee didn't exist at that time. No, but there was a different name for it at that time. The employment manual said the county operations committee. And with very little digging, it was possible to see that it had been reconfigured and renamed after a new board came in. Okay. I might misunderstand the facts then, because I thought the county operations committee was specifically created after Ms. VanViek sent the letter to Mr. Atkins. Oh, no, Your Honor. The county operations committee, actually, I'm sorry, it was the county management services committee? Yes. My apologies. Yes. The county operations committee undertook those and some other roles and a little bit of a reconfiguration upon the beginning of a new board that came in after the time period that these letters were exchanged. So the committee that the manual says the employee can take the issue to no longer exists? It existed in a different name, Your Honor. All right. Then we'll agree to disagree. Your position is when Ms. VanViek wrote the letter, the county operations committee had been passed by resolution by the county board and was operational? Yes, Your Honor. I have to check the exact dates, but it was either the management services committee or the county operations committee, and it was the committee that was responsible for human resources issues and employment issues, and this is where the provision was in the county code in the employee manual for personnel issues. I know the demand was made to receive a pension. How much of a contribution or what check was forwarded to the county? No check was forwarded, Your Honor. That was one of the procedures that was not followed at the time, and one of the reasons why the forms were not submitted on to IMRF. There were many other reasons, but 6.05 of the IMRF guidelines was not followed in that respect. And back in 1984, there was a withdrawal from the pension system by the petitioner. He reimbursed all prior contributions, correct? Yes, Your Honor, he was. So until the demand was made at the very end of his services to the county, he was not a participant in the pension system? He was not a participant in the system, and in fact, he signed a form on December 3, 1984, stating that he was no longer a participant in the IMRF or a reciprocal system, and nothing changed between that date and the end of his last contract. Counsel, I don't mean to correct you, but after arguments are over, if you want to correct me, you're welcome to. The letter offered by the Assistant State's Attorney on behalf of Ms. Van Vieth was June 16, 2014. The county adopted the resolution enacting the operation committee on March 10, 2016. That was after there was a motion to dismiss the mandamus action. Yes, Your Honor. I would not stand to correct you. I acknowledge that I wasn't certain of the exact dates. I just know that there was a turnover of board and a reconfiguration of the committees, and we did provide all that documentation as an appendix for a supplemental brief on the issue that the court asked us about. There was a body to appeal this issue to, and we spent a fair amount of time on the motions to dismiss and the mandamus action discussing that. After the case was put on hold, basically, by the circuit court for purposes of pursuit and exhaustion of administrative remedies, the parties submitted expense. Which case? It was the mandamus case at that point. That was the only one that was pending, Your Honor. And that was filed against Ms. Van Vieth in her capacity as IMRF representative? Yes, and also against Lori Curtis-Luther, who was the county administrator and the county of Peoria. Not according to the complaint. We're talking about 14 MR 551? Oh, it is Lori Luther in her capacity as administrator, and Kate Van Vieth as the assistant administrator. I thought I had that one right. Yeah, you do. Was IMRF named by Mr. Penn? No, Your Honor. We hadn't really gotten to the point of whether it was a necessary party. The first issue we tackled, and because of the process that we believe is required, is to exhaust the administrative remedy. This is a local issue that should be decided locally, and that's the purpose of the administrative review law. And I agree with you 100%. And in your supplemental brief, you say that, in fact, there's a provision in the county code that allows the county board to delegate its authority to a committee. Yes, it's in the county's act, Your Honor. There's a provision. But when somebody by statute wants to appeal that decision, they only have 20 days to file in the circuit court. So I'm just wondering, and I'll direct you to the statute. It's 5-1-6006, Delegation of Authority to Determine Claims. That's under the statute authorizing counties to act. So perhaps there was an avenue for review available to Mr. Patton, but he had a 20-day window to get it into the circuit court. And I'm not sure that's been done. I'm not sure either, Your Honor. I understood, and I think we understood as we worked this case through, that the ARL provision, which I believe is 35 days, applied to the administrative decision. And I do believe that that was complied with because the opinion, the decision of the County Operations Committee came down August 30th. 2016. Yes, ma'am. And the administrative review complaint, that's the 16-MR case, was filed prior to September 30th. Was it filed within 20 days of the denial? I don't believe so. The date I remember, Your Honor, is the 26th or 7th of August. In any event, the County Operations Committee proceeded with an administrative hearing on the issue of the certification of the forms and submission of those forms to IMRF. And it made several factual findings. And under the administrative review law in the state of Illinois, those findings are to be prima facie true and correct. And there's been no challenge of those. And they included that in 1984, Mr. Penn suggested this arrangement to the county. Several contracts were entered into. Each one of those contracts specifically stated that the parties agreed he was an independent contractor. The committee found that the provisions, the letter on April 24th, did not comply with the IMRF provisions to tender the fee, where the hours match the actual time records, and where the participant certifies that he is a participating member of IMRF. Mr. Penn was not. He certified that he was. And the result of all of these issues, including that he was an independent contractor, caused Ms. Van Beek to decline to certify and submit these forms. And finally, I just want to get this out before rebuttal, Your Honors, and that is that the statute at issue here, at least one of the statutes, which is the pension code 7-109, 1, 2, and 3, very specifically says that independent contractors are not to be covered under the IMRF. Part 3 is a catch-all. Part 3 of that statute is a catch-all. It does not say that public defenders and parole officers must be enrolled in IMRF, regardless of their condition. The exact language is, employees of the county, including public defenders, including without limitation, public defenders and parole officers, and who are otherwise have all the indicia of employment, are to be enrolled. The purpose of that section was to protect classes of employees that maybe did something unusual in the county's parlance or business. For example, public defenders represent individuals who are adverse to the county. I believe what the legislature is trying to do there is to make sure that if you are an employee, if you are controlled by the county in this instance, and if you are paid by the county, and you are not an independent contractor, the county is not in a position to create classes of workers who cannot be enrolled in IMRF. And that's the mistake that the IMRF made in its special memorandum and the mistake that's being made by individuals who have been in touch with Peoria about this particular arrangement. Thank you very much. Oh, I'm not going to let you off the hook so easily. If I ignore that independent contractor issue and consider for the sake of argument that Mr. Penn was a public defender, isn't there an hourly limitation? He has to work 600 hours and 1,000 hours before he's eligible for a pension? So is the question, Your Honor, if he is not an independent contractor? Yeah, just assume he is. Yes. I'm assuming. I don't require you to assume. But when he presented his evidence to the committee, was there sufficient documentation for the committee to conclude he met the requisite minimum numbers of hourly employment to qualify for a pension? There was not documentation. There was plenty of testimony. In fact, Mr. Penn testified that he did not have any documents that reflected the hours that he spent. Not necessarily unusual as a criminal defense lawyer. Many of us write down every single minute of what we do, and so we're used to that. But he did not have time records, and that was one of the difficulties that Ms. Van Beek had. In fact, she testified specifically to that. She could not, based on what was in front of her, certify those hours. Additionally, when we had the verbal and oral testimony at the hearing, that did not match up in any way, shape, or form with the hours that had been estimated in the forms that had been provided. The committee heard all that testimony, resolved the issue, and concluded, I think based on the hours, that he wouldn't qualify. Did the circuit court give deference to those findings? No. Did the circuit court explain why the committee's findings were contrary to the manifesto evidence? No, Your Honor. Do you have a number? As I'm reading all these briefs, I'm thinking, what kind of money is the county going to have to pay into INRF if all the cosmic tumblers line up in favor of Mr. Penn? It's a significant mid-six figure number. And there's a penalty of 7.5% on that as well? There may be interest. This is not in the record. These are communications. I'm just doing the best I can to answer your question, Your Honor. But I want to get a perspective of, we're not talking about a small sum of money or the potential for a very nominal penalty for Ms. Van Veek's failure to certify. Correct? I mean, it's a significant amount of money here. The cost to the county of doing this at the end of a 30-year period of agreements is significant. I would absolutely agree with that. And there was no opportunity to do that and to account for that over the time because of the repeated understanding and conversations about his status as an independent contractor. You've answered my questions. I appreciate your input very much. Thank you very much, Your Honor. Thank you. I'll reserve my comments for rebuttal if I may have the time. Thank you. May I please record counsel? I think it's still good morning. My name is Justin Penn, along with Lee Smith. I represent the appellee in this case. I want to begin, because Your Honor asked a question about the payment, two things, before I get into my sort of structure. My understanding from my conversations with the IMRF, as well as my conversations with counsel. It sounds like we're going to get into some hearsay. I really want you to come back with remarks to the record, if you can. To the record? To the record. I was just going to. Okay. I have a question. Yeah. The amount of money and the size of it really is not due to Ms. Benney. It's not her failure to certify. It's from the number of years. Had she certified that day, we're really not talking about an increase from if she had done it that day, than if it happens now. Or if they'd done it in 1985. I mean, the point of it is the contribution on a go forward, and this is where we started on this with Justice Carter's question, I'm hearing for the first time that the reason that they rejected it is because there wasn't a check with it. That's not in the record. So for a justice rights question, you want to stick to the record. There is nothing in the record that says that the county rejected this because Mr. Penn didn't tender a check. Mr. Penn can't tender a check because Mr. Penn doesn't know how much he owes, because you have to get that information from the IMRF. That wasn't the basis for the committee's decision. No, not at all. I'm just saying, what I just heard. Because you have very limited time. So at its core, this case is about two issues. The first issue is whether a public defender who is an independent contractor is included in the IMRF. If the answer to that question is no, then we're out. That's the end of it. Because there's no question he was an independent contractor. If the answer to that question is yes, then the question is, did Mr. Penn, in the time that he was in the position, was that position reasonably required to work the minimum number of hours? That's it. Now, those are the two questions that are put forth in this appeal. As to the first one, and this is in our briefs, it's very, very clear. The Illinois Pension Code and all the cases interpreting it and all of the Attorney General opinions are very, very clear on this point. The Illinois Pension Code says all persons, including without limitation public defenders, who receive earnings from the general or special funds of a county, are employees of the county, notwithstanding that they may be appointed by and are subject to the direction of other person or persons. That's it. That's what it says. That's what the Pension Code says. It's what it's said forever. It goes on to say they are common law employees. Public defenders are common law employees by virtue of the fact that the county pays their salaries, fixes their rate of compensation, and appropriates funds for payment of their earnings. All of those present here. And status as employee is a prerequisite for asking for the, I forget the label, the omitted service or whatever the label is. Well, you have to be a qualifying, you have to be in a qualifying position. Employee. And an employee, yeah. That's a prerequisite, yes. So that is totally consistent with Special Memorandum 266, which says public defenders and their assistants are considered to be county employees for IMRF purposes regardless of their contractual status. That's absolutely consistent with Section 3.70B of the IMRF Manual for Authorized Agents. And assuming that letter is true, does it negate the requirement that this common law public defender provide documentation? Normally it's contemporaneous documentation that he or she has met the minimum. You're saying that's not required? What I'm saying, I'm absolutely, positively, unequivocally telling you that is not required. Why? Because, and that gets to my second point of the hours. With respect to the hours, everything, all authority on this, the county is required to make a good faith finding of the hours reasonably expected for a position. That's not an independent contractor thing. That's everything. Every position that the county has, this is in the IMRF Manual. They have to yearly review this. That's what Ms. Van Dyke is charged with doing. Every year they are required to review this and determine which positions are qualifying positions based upon the hours. They didn't do that. They admitted they didn't do that. It is not, there is nothing, there's no obligation in law, there's no obligation in the IMRF Manual that an employee prove his hours. There's no obligation that he or she keep his hours. You're asking us to interpret the IMRF regulations that I expect are summarized in the Manual. You're asking us to interpret that without any input from IMRF. I regret that. But I'm not asking you on the record to do that because the IMRF, in the record, has said to us, we agree, if he is, independent contractors, public defenders are employees for purposes of IMRF. They say, in the record, it says, if they certify the hours, he will be in. Even if they certify one hour? No, if they certify one hour, then he wouldn't qualify. They'd have to certify the hours that matter. But let's talk about the forms because I think that's something that is fairly important here. These forms, I want to be very clear, they don't have any independent legal significance. These forms are not, I believe we could have filed this lawsuit without the forms. I believe we could have filed this appeal without the forms. There's a lot of distraction on these forms as if they have some independent legal significance. No one is contesting that these forms were submitted for purposes of fraud. That disclaimer at the bottom is not the type of disclaimer that would subject anybody to any forms. The IMRF just went through this with the independent contractor, public defender in Putnam County, a tiny county. And they went through the same thing and they enrolled him. So these forms are not a bar to getting IMRF enrollment. As a practical matter, the first form, Form 10, 610. They enrolled him. You're talking about another county enrolled another person? IMRF enrolled an independent contractor, public defender in Putnam County. IMRF? Yes. And they didn't have the forms? I don't know if they had the forms. I'm just saying they went back years and enrolled. You said that you could have filed this appeal under the administrative review law without the forms. No, I'm saying, no, I think we could have done, I think we could have absolutely filed an appeal based upon any decision that the administrative agency gave us without the forms. I think the point of the appeal was he is entitled to a pension. That is the point of the appeal. Well, that's the point of the mandamus action, but I need to make sure, I want to make sure in my mind, that there is an administrative decision that the circuit court should be reviewing. I understand, and I understand that concern from the supplemental briefing. And if Your Honor went through all the briefing in the first case, you would see that we addressed this issue. We raised it. I guess I was going to ask you why you changed your position because you were pretty adamant when you were in front of the circuit court. You say, Judge, they're not an administrative, there's not an administrative need for this. They're not an administrative agency. And now you've changed your position? I don't know that I, I respectfully will say I don't know that I changed my position. I think I said that this court has jurisdiction based upon the fact that, like the case we cited, the Excedian case. We say in the absence of an enabling act, review by a common law writ is available. That's what we say. I don't know that I changed, I would respectfully disagree. I'm not sure I changed my position. I'll read another quote from you at R1104 in the record. And you said to the court, before all that, so zero. Before one and two, the Administrative Law Review Act does not apply where there's not a decision from the IMRF. Do we have a decision from the IMRF? We do not. So I think your position has changed and I'm trying to understand why. At the time I took that position, the position I was arguing against was that I had to go through this administrative remedy. I didn't get a ruling on that position. The county went and created an appeal process, as Your Honor pointed out. That's the document that you referred to. The appeal process they created appoints Mr. Woodrow, the attorney for the committee, to advise them on all legal interpretations and to advise them on evidentiary matters. We went through this extremely one-sided process, which I submit had a predetermined outcome, and we appealed it. And when we appealed it, I believe Judge Keith understood that this predetermined outcome that was created. Okay. But you recognize there has to be a final administrative decision. I absolutely understand that. And there has to be enabling legislation. And I know you understand that because I have read the report. Yeah. When the county created the committee, did the county resolution say the committee's decision is subject to judicial review pursuant to the administrative review? I don't have it in front of me, but my recollection is that it did. And so that's what concerns me about we do not have a final administrative decision. And I know that the judge kind of hijacked what was going on. The judge says on the record, get me a final decision, and I'll give you a decision. You know, Judge, I will say this. I'll defend the circuit court on this pretty heavily. I would strongly, strongly suggest that the court review the hearing on the second motion to dismiss where this came up. The judge was very concerned and was three or four times assured by the county that this would get to the IMRF. That's what they said. And in that process, what they said was, Judge, administrative remedy, you're bound by the administrative review. You're bound by the administrative record. And he said, I'm very, very, very mindful of the administrative evidentiary record. And he said, I want to caution you. If this ends up in any bureaucratic roadblock, if this ends up being that this is for some other reason, then I'm going to not be happy. So we went. They created the process, and the process was to allow them to get their evidentiary record. What was shocking, I mean, mind-numbingly shocking, is that we got there, and there was no evidence presented other than the evidence that was already in front of Judge Keith. All they presented was the evidence, the deposition of Keith Van Deek that I had already taken, that was already attached to the response on the motion to dismiss, and then the forms. That's it. They didn't put in any new evidence. So I don't know why we needed the evidentiary hearing except to get them an administrative ruling, which then got us here. So I think if you read that hearing, Judge Keith was – He must have been corrupted. He wasn't trying to hijack it. He was just trying to do it the right way. I think he was trying to do it the right way. I'm not entirely sure that we got it right in the sense of the Administrative Enabling Act. I don't know if that's the county's job. I mean, they did it. I didn't do that. Sometimes it's the state's job under zoning cases. There's state legislation that says the Zoning Board of Appeals decision, that county committee's decision, is reviewable under the administrative law. But the county hasn't told us that the circuit court can review the operations committee's decision. Yeah, I understand what you're saying. You're saying there's no county board resolution that says that. Yeah, I think the county said it in their briefs. They said it in their supplemental briefs, certainly. But I think as a body politics speaks, I can't correct you on that. I don't know that you're – Some simple questions. If I get the big picture here, and you say I can't ask any questions about some of this, but I'm going to. Okay, so all these years later, there was some contract forms here that Mr. Penn signed that he was opting out of the pension system. In 84. And that was the way he was paid by the county. He got contributions from the county. Correct. He didn't pay into any pension system. He couldn't. Because he opted out of it. Because he was an independent contractor, and they told him he couldn't. That's what he voluntarily chose to do. No question. No question about that. So then a few days before he quit, he sends these forms. There's no evidence that he's making any contribution to the pension system. He will. He has to. You know. But in this record, there's no evidence that he's making a record to the system. Yeah, but Justice Carter, there's no mechanism by which to make any. It all starts with Form 6.10. You have to get enrolled. We can't enroll ourselves. That is a form that is physically impossible for us to enroll ourselves. If you print it on the website, it says, Employer needs to file this electronically. We can't send the money. There's no mechanism by which to send the money. The money gets paid to the IMRF, and it will be determined when he is enrolled how much money he owes, just as it will be determined what the go-forward payment is for the county once he is enrolled. There's no mechanism by which to do what you're suggesting is not in the record. So this is certainly a very unusual situation, isn't it? It's peculiar. It's an odd situation. I will grant you that. And it was compounded by four years of bizarre litigation, yes. So what you're asking our court to do in overturning this and negating all these statements that he's an independent contractor for all these years? Judge, I will, and I'll direct you to the record that shows about the communications coming from the pension boards to the county that Mr. Penn was not informed of. Two months after he was enrolled, when they all made this mistake that he was an independent contractor and that that didn't apply. Well, when they made the mistake that an independent contractor is not required to be in the IMRF, two months later the county got a letter from SERS, which was the IMRF then, saying you have to enroll him, two months later. So why weren't they named? I can't name them. How can I name them? How could we name them? They administer the fund that your client wants to. I can't get to the IMRF. This is all in the record. I can't, my client cannot get to the IMRF for a remedy unless he is enrolled. There's no mechanism by which, my declaratory judgment against them would say county enroll him. I agree with you. A mandamus action slash declaratory action could result in that directive. Could result in that directive. We are here on administrative. I can't name the IMRF in an administrative appeal to the county of Peoria. I agree. So I get a decision from the county of Peoria and then I appeal it. It's an appeal. If you got a decision from IMRF. I never got it. I can't. I can't get it because I can't get my client there because they don't enroll him. If they say, here's what would happen. If the court grants you relief in the declaratory action, you can get there. If this court grants my relief here, I can go to the IMRF and if they deny it, which they very well could, I then have a remedy against the IMRF and I have an IMRF appeal process and I have an administrative review there. We could be back here in five, three years. I'm not suggesting there's not an avenue. What I'm suggesting to you is I can't get there until I get enrolled and get a decision. Well, until I get a decision from the IMRF. So I think you're absolutely right that I can appeal an IMRF decision on a larger scale and I'd be back in court. As soon as I get a decision from the IMRF. But I can't get that decision until this court, well, until they are signing the documents. Justice Carter, I interrupted you. Have your questions been answered? Thank you. Mr. Woodrow, I know it's not a pleasant feeling coming up knowing that you're going to get peppered with questions, but I do have a question and that's the benefit of oral arguments. This is the only time we can figure out what happened and why. In your supplemental reply brief regarding jurisdiction, you fight pretty hard to say if you don't do it at health court, you know, it would be a great travesty. You need to exercise jurisdiction. But I want to ask you a question. If we do not find we have jurisdiction, it's limited jurisdiction to review an administrative decision, it leaves you with the county board's decision. The trial court's order would be vacated and the committee found that Mr. Penn was not a qualified employee. So I do not understand why you are fighting so hard to have us decide this issue under the administrative review. Well, you're right. It is somewhat unpleasant to be peppered with. I know. I know. I know.  I know. I know. I know. I know. I know. I know. for any particular outcome other than we very strongly believe that this was a personnel matter to be handled locally and for the committee to do the job that it did. And we are not aware of any other way to appeal that other than through administrative review. What is there to appeal? The decision was by the county in favor of the county. And I like to think that I'm a fairly deep thinker and I like to think what happens down the road in other cases. If the county human resources officer told an employee that they could not have three weeks of vacation because the county requirements are two weeks after one year of employment, is that something that's going to go down to the county operations committee? And is that something that's going to come back to us? Because those kinds of lawsuits, you know, personnel matters, will really clog this core. Yes, Your Honor. And I'm very sensitive to that. The answer to that question is no, that matter would not come. Certainly not under the provision that we're here. This provision that we're here under specifically, this county ordinance, specifically addresses an appeal procedure for omitted service credit and the other relief, the omitted and past service credit requests that Mr. Penn made. It specifically addresses those. For Mr. Penn? Yes, ma'am. Well, for employees. Does the county operations committee still exist or was it created just to grant an appeal to Mr. Penn? Oh, no, Your Honor, it was not. The county operations committee wasn't created. It was transformed and it was a consolidation of others. And so it was a new name for a couple of different committees that had different jobs, but one of those was human resources. I'll put a ticking on you. No, that's okay. I have a question about the reconfigured committee and the committee that preceded it. In terms of the authority and their relationship to the IMRF board, when there's a decision regarding, I mean, this is an unusual situation, but there are many about whether the correctional officers are considered to be police officers and whether or not they are participating or whatever. When there is a dispute and it's resolved within that committee and there's a challenge to that committee, are you saying that they stand in the place of the pension board who, I mean, it says when you're applying for correctional service credits, that's the decision that gets made by the IMRF board. That is resolved by them. So is that, this, I mean, are you saying that this committee's operation and an appeal from this should really go to the IMRF board or no, this is the IMRF board for Peoria County, that this is what they do and this is the final. Is it? I think it's a little odd. Is that the county's position that this is the end? Well, Your Honor, the IMRF guidelines are part of the record, not just the ones that the plaintiff has referred to, and it does list at, in Section 2, the different obligations and powers and responsibilities. What page are you reading from? I'm guessing it's... It's Common Law Record 389, which volume, I'm afraid, but at least we know you can look in one or two places where there's 389. I know that, you know, you're authorized to appoint an agent to certify the fund, whether or not a person can participate, but then there's the other question of whether or not they are actually going to get benefits or they're going to get these service credits, and that issue is a little, seems to be a different issue. And, you know, according to Justice Wright in the questions that she asked you, that if your argument prevails here today, you know, it would be the end, but then you're saying that, no, you would like there to be... I guess I'm confused about your supplemental brief, then, are you saying that this should be the end, that there is no other relief if we decide today that we don't have jurisdiction, that it is the county committee, reconfigured committee, that was acting as the IMRF board to make the decisions on both participation and coverage for the application for the correction of service? Yes. I believe the answer is yes, Your Honor. Let me just say one thing that has come up from all three of Your Honors, and that is that there is in the record, and I do not have the site, but there is a board resolution that approved the procedure. It wasn't created. It was put together through other hearing procedures from other components of the board, such as the ZBA. The board engages in hearings all the time in different types and knows how to do this. And that resolution and that procedure does say, it makes it very clear that the committee was delegated the responsibility to handle this and that the decision will be the board's final decision. So I think that also in part answers your question, Your Honor. And I just want to say, in terms of the supplemental briefing, at least the understanding we had of the question was, is this case here properly on administrative review? And we are an administrative agency. I would love to be able to say, gee, I guess there should be no appeal here. But we are an administrative agency, and we set forth in our brief accurately, I think, what the answers were to your questions, and we concluded that this court does have jurisdiction under the administrative review law. Now, you know, our position is that the trial court didn't do this the right way and that the county committee did do it the right way and that this court should uphold the county committee's decision because it did listen to the evidence. It did review the evidence. Judge Keith omitted at least 50% to 60% of the factual findings that the county committee made from his opinion. And those findings, which triggered the action here, which was to not certify the forms, that's really the action that was made, Your Honor. Those factual findings are not challenged by anyone anywhere and under the law are to be given the highest level of discretion. Deference. Deference, pardon me. Sorry. Those questions you asked me, Your Honor. Sorry to correct you, but I think the record should state what you're intending. Yes, I appreciate that. And so in closing, because I'm pretty sure the time is up, we asked the court to uphold the county committee's administrative decision based on the work that was done, including extensive pre-hearing submissions, an all-day hearing, and deliberations that went over the course of a couple of months with independently hired counsel, by the way. Thank you very much, Your Honor. So let me explain why I picked on you with deference versus discretion because your point that you're arguing is the trial court doesn't have discretion to make its own findings of facts. And if I understand the issues you've raised on appeal, that's your beef here, that Judge Keefe did exercise some discretion and made his own findings of facts. That's exactly right. So I'm very sorry that I corrected you. No, and I will tell you, Your Honor, it's not the first time I had Judge Shader once say to me, Mr. Woodrow, are you trying to say that the defendant had a chilling effect on your client? I said, yes, Your Honor, that's exactly what I'm trying to say. So thank you very much for clarifying. Thank you. Thank you, counsel. And we'll take this case on in five minutes. We'll take a quick lunch break and then we'll proceed to the other cases. Thank you all.